In the Matter of JACK GOLDSTEIN et al., Similarly Situated, Petitioners, against JOSEPH A. McNAMARA et al., Constituting the Municipal Civil Service Commission of the City of New York, et al., Respondents.

Supreme Court, Trial Term, New York County, July 6, 1951.

*Leopold V. Rossi* for petitioners.

*John P. McGrath, Corporation Counsel (Albert Cooper* of counsel), for respondents.

DICKSTEIN, J.  This special proceeding was tried upon matters formulated in the opinion of the Appellate Division (276 App. Div. 1072) resulting in the order of April 25, 1950, to determine " whether or not the eligible list for Transit Patrolman, Bridge and Tunnel Officer and Correction Officer (male), as certified by Municipal Civil Service Commission on May 3, 1949, is the eligible list appropriate for appointing of candidates to the position of Inspector of Markets, Weights and Measures, Grade 2, in the Department of Markets of the City of New York.''

In 1936 an open competitive examination was held for the position of supervisor of markets, weights and measures (ungraded) and a list promulgated October 14, 1936.  Until February 1, 1937, sixteen persons were appointed from that list to such title at an annual salary of $1,800.  Negotiations between the civil service commission and the commissioner of markets resulted in the grading of positions in the department of markets.  In July, 1937, certain existing titles, including the title of supervisor of markets, weights and measures, were stricken out from part 1 of the ungraded service and placed in the graded service, part 4, the inspection service, group 5, inspectors, miscellaneous.  The title of the position of supervisor of markets, weights and measures became inspector of markets, weights and measures, grades 1, 2, 3, and 4, the only recognized title.  Each employee in the department of markets accordingly fell into the grade corresponding to the salary he was then receiving.  While they had been in the ungraded service, there was no maximum limitation of salary.  On the occasion of the change-over all persons in the employ of that department on July 1, 1937, were eligible for advancement to the next higher grade without necessity of promotion examination.  As a result of such treatment a promotion examination for grade 3 which was projected and for which incumbents in grade 2 were eligible became unnecessary and was never held.  Further, at the time of the reclassification a substantial number of names remained on the 1936 list. A considerable number of appointments was made from that list after the reclassification.  Finally the list for supervisor became exhausted.  A hiatus followed and in October, 1941, another existing list, patrolmen number 3, was declared appropriate for appointment to the position of inspector of markets, weights and measures, grade 2, and five such appointments were made and that list was exhausted.  In the absence of any other suitable list and as need for inspectors became urgent, appointments were made on a provisional or war emergency basis.  Failure to hold

examinations for the position and title of inspector continued through the war period while the number of provisionals in the city service rose to probably 30,000 because of the inability of the civil service commission to catch up with the backlog of examinations which should have been held and because of attendant lack of candidates. In the meantime, in 1947 a promotion examination for grade 3 was advertised for the purpose of affording opportunity of advancement to those in grade 2 who had been appointed after July 1, 1937. The examination became unnecessary because by resolution of February, 1948, those who had been appointed to the grade 2 positions after July 1, 1937, and before the adoption of the resolution, became eligible for a single-grade advancement without examination. In 1949 an examination was ordered for the position of inspector, grade 2, in the department of markets. The examination, however, was never held because the civil service commission considered the tri-title list of transit patrolman, bridge and tunnel officer, and correction officer (male) suitable and certified it to the commissioner of markets for appointment to the position of inspector of markets, weights and measures, grade 2, to replace the provisionals in that position.

From this recital of the history of the position and the manner in which it has been filled, I find nothing to indicate or which tends to indicate that the criticized certification is unreasonable or that the list from which certifications were made is not proper. The differences referred to, such as sex, age, sight, and physical requirements and others, are not of such significance as to be at all controlling. The provisionals now employed presented qualifications in a majority of cases showing only elementary schooling and in some additional cases one or more years of high school attendance.

The number of persons employed in the title and grade appears to be about eighty. About fifty-two of the total are provisionals and of these five are women and three others are permanent female appointees. The provisionals were appointed through the years 1944–50 and of them ten were approved after April 12, 1949, when the tri-title list was promulgated. It was on May 3, 1949, that the list was certified. The figures herein stated were supplied by the corporation counsel and the petitioners have raised no objection. The fact of approval of new appointments on a provisional basis between April 12, 1949, and May 3, 1949, would appear to indicate only that there was urgent need for additional employees and that the civil service com-

mission had not yet given attention to the matter of correcting the existing situation with respect to provisionals, and finally, by May 3, 1949, had come to the conclusion that, pursuant to statute, its function would be properly exercised by certification of the tri-title list for the purpose of filling the position of inspector of markets, weights and measures, grade 2.

The duties of the position of inspector of markets, weights and measures, grade 2, appear to be as follows: to inspect, test and seal all types of weighing and measuring apparatus used in the city of New York; make investigation to determine if the laws and ordinances governing such apparatus and the manner of sale of commodities are being violated; supervise the sale of market produce from vehicles in open air markets; secure co-operation of police, tradesmen, shippers and the general public using streets and sidewalks of market district; be responsible for cleanliness and orderliness of markets; enforce license requirements; report infractions of laws and ordinances; give testimony and present evidence in court, and perform such other duties as may be required. The duties with respect to the tri-title list appear to be the following: Transit patrolmen; to enforce all laws, ordinances and regulations within the jurisdiction of the board of transportation and to perform related work. Bridge and tunnel officer; to collect tolls, direct traffic, patrol structures, clear traffic lanes, remove snow and assist in general maintenance work during the winter season; enforce all laws, ordinances and regulations within the jurisdiction of the bridge and tunnel authority and to perform related work. Correction officer; to guard, discipline and instruct inmates of correctional institutions, and to perform related work. With respect to the duties of inspectors, it was also testified that they make inspections of business places and other places that use weighing and measuring devices, and to test these devices by comparing them with standards of the State of New York, and to determine if they comply with these standards, and in the event that they do not to mark these devices condemned and direct the owners to have them repaired or if the device is in such bad condition that it is beyond repair, the department of markets has the authority under the law to confiscate those devices; they supervise indoor and outdoor markets and also the wholesale market; they look at questions of cleanliness, prices, and they are concerned at times with prices, and weighing and measuring devices, and in general

determine if the laws of the State and of the city are not violated; they also check on misleading advertising.

The commissioner of markets takes the position that the provisionals were advised of the projected examination ordered in 1949 and prepared themselves therefor. Their displacement would disrupt the department and the efficiency of its operation. They would be deprived of opportunity of open competitive examination to protect and retain their employment.

The civil service commission contends that both the inspector and the tri-title positions involved law enforcement, inspectional work, learnability in tasks, reasoning ability, and that the examination conducted for the tri-title position was directed to such personal and intellectual characteristics in order to obtain those who can learn and do learn on the job. The court finds that such common requirements do exist for positions in both titles and that such common characteristics outweigh any dissimilarities. Moreover, it is the practice with respect to both titles to put new appointees through a period of training regardless of their prior experience and qualifications. Indeed, there can be no prior training and experience with respect to the positions since no comparable jobs exist outside the Government service. Consequently, in each instance the requirement is for a person capable of performing duties after a period of limited training, and for a person having general intelligence, ability to follow orders, and to use good judgment and physical ability, for all of which the tri-title list candidates had been tested. The latter list, incidentally, has been used to fill the positions of court attendants, inspector of licenses, and others. The civil service commission takes the position, furthermore, that a call for certification of women to fill vacancies requiring female appointees would receive appropriate attention.

The problem has arisen by virtue of the pressure and duty upon the commission to set in motion procedures for the removal of provisionals from the civil service and the ultimate decision in this instance to accomplish the legally required objective of certification of a list deemed appropriate. The court does not deem significant the particular history of the position, the statistics affecting the present employees, or the approval of provisionals in the short interval between promulgation of the tri-title list and its certification to the commissioner of markets. The arguments urged by the commissioner to the civil service commission in the interests of the provisionals could only influ-

ence the commission in the exercise of its discretion and in the discharge of its duty and do not render its action unreasonable if it considered these persuasions to be outweighed by other considerations. It was for the commission to determine whether no appropriate list existed and thus creation of a new list was necessary. The commission decided an appropriate list existed and a new list was not proper. The proof of an earlier use of a patrolmen's list for this purpose and the tri-title list for purposes other than its advertised circumscribed purposes support the action as a matter of commission practice. (*Matter of Forman* v. *Kern,* N. Y. L. J., May 24, 1939, p. 2390, col. 4; *Matter of Ward* v. *Kern,* N. Y. L. J., Feb. 8, 1940, p. 626, col. 6; *Matter of Carr* v. *Kern,* 279 N. Y. 42.) The court finds no substantial dissimilarity in the positions and that no problem is presented by the fact that a few of the positions in this title are held by women whereas the list certified by the commission consists of men only. Certification of an all-male list was not an objection raised by the commissioner. Desire to fill a position by a female was not thereby thwarted, nor does it appear in fact that any women are among the provisionals who are actually to be displaced. Certainly the record does not support the claim of discrimination. It is felt the issue is gratuitously injected. The commissioner of markets, called by petitioner as a witness, presented no such issue. If need exists or will exist for certification of women to fill vacancies, it is presumed the commissioner will make the need manifest and the commission must respond in a proper manner.

The differences in the names of the positions or the titles are not controlling here so much as the respective duties, qualifications, and fitness, the common inspectional nature of the positions, calling for general intelligence, fair judgment and for no special technical skill. There is no claim of bad faith here but only of abuse of discretion. The court determines that the certification cannot be disturbed because the action taken was well within respondent's proper discretion. Finally, the court determines accordingly that the eligible list for transit patrolman, bridge and tunnel officer and correction officer (male), as certified by municipal civil service commission on May 3, 1949, is the eligible list appropriate for appointing of candidates to the position of inspector of markets, weights and measures, grade 2, in the department of markets of the city of New York.